IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISON

| | |
|---|---|
| LAURA ROBBINS and CHRISTOPHER ROBBINS on behalf of themselves and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>DURHAM SCHOOL SERVICES, L.P.,<br><br>　　　　　Defendant. | CASE No. 1:09-CV-00609-LY |

**PLAINTIFFS' REPLY BRIEF
IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Hubert Bell, Jr.
State Bar No. 02076000
1907 North Lamar Blvd., Suite 300
Austin, Texas 78705
P: (512) 469-9006
F: (512) 469-9008

LANKENAU & MILLER, LLP
Stuart J. Miller (SJM 4276)
132 Nassau Street, Suite 423
New York, NY 10038
P: (212) 581-5005
F: (212) 581-2122

THE GARDNER FIRM, P.C.
Mary E. Olsen
M. Vance McCrary
210 S. Washington Ave.
Post Office Drawer 3103
Mobile, AL  36652
P: (251)433-8100
F: (251) 433-8181

Cooperating Counsel for
THE NLG MAURICE AND JANE SUGAR
LAW CENTER FOR ECONOMIC AND
SOCIAL JUSTICE, a non-profit law firm

## **Table of Contents**

1.  The Company's argument on the merits is both premature and incorrect. . . . . . . . . . .   1

2.  This case is appropriate for class certification; the Company's arguments to the contrary are based on erroneous views of the law. . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    a.  Employees who were on layoff with expectation of recall have the same claim as employees who were actively working on the date of the plant closing; they, too, were entitled to notice 60 days before the plant closing. . . .   3

    b.  The employees on layoff are entitled to the statutory remedy, just as are the employees actively working on the date of the closing. . . . . . . . . . . . . . . .   4

    c.  It is immaterial that some employees sought and received employment with the school system's new contractor while others did not. . . . . . . . . . . . . .   6

    d.  Part-time employees have the same WARN Act claim as full-time employees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    e.  The Company's arguments about numerosity and superiority are simply an expression of an inappropriately extreme anti-class-action stance that ignores the benefits of the class action device. . . . . . . . . . . . . . . . . . . . . . . . . .   9

# **Table of Authorities**

*Baker v. Washington Group Int'l*, 2008 U.S. Dist. LEXIS 20343 (M.D. Pa. 2008) . . . . . . . . .   8

*Carpenters District Council v. Dillard Dept. Stores*, 15 F.3d 1275 (5th Cir. 1994) . . . . . .   passim

*Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . .   8

*Marques v. Telles Ranch*, 131 F.3d 1331 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Mine Workers v. Martinka Coal Co.*, 45 F.Supp.2d 521 (N.D.W.Va. 1999),
    *aff'd,* 202 F.3d 717 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

29 U.S.C. § 2101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7-9

29 U.S.C. § 2102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 4

29 U.S.C. § 2104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 6, 7, 9

20 C.F.R. § 639.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ,   3

20 C.F.R. § 639.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

20 C.F.R. § 639.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

20 C.F.R. § 639.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 9

**REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Plaintiffs respectfully submit this reply in support of their motion for class certification. The arguments of Durham School Services, Inc. ("the Company") are wrong as a matter of law.

**1.    The Company's argument on the merits is both premature and incorrect.**

The Company attempts to convey the impression that it will be due to win on the merits, on the grounds that it gave as much advance notice as it could, once it decided not to seek a renewed contract with the school system. This fight is premature because class certification is an issue separate from the merits of the case. An argument that would (if accepted) cause the defendant to prevail against the whole class is not a reason to deny class certification; on the contrary, the Company's reliance on such an argument simply underscores how reasonable it would be to have the case proceed as a class action.

Even when the Court reaches the merits later, the Company will not prevail. The WARN Act does allow an employer to give less than 60 days' notice if the plant closing was "caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A). Under such circumstances, the employer must give as much notice as practicable. The "unforeseeable business circumstance" defense is to be narrowly construed against employers. *Carpenters District Council v. Dillard Dept. Stores*, 15 F.3d 1275, 1282 (5th Cir. 1994). An employer relying on this part of the Act must "give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3).

In its belated WARN notice, the Company explained that it had withdrawn its bid to provide transportation services to the school system, and so it would be shutting down its operations at this facility. We expect to demonstrate, on the merits, that this triggering cause for

1

the plant closing - i.e., the Company's withdrawal of its bid – does not qualify for the "unforeseeable business circumstance" defense, as a matter of law, because it was a decision *by the Company itself*, a decision that was within the Company's own control.  *See Carpenters District Council*, 15 F.3d 1281-82 (noting that under the applicable regulations, an unforeseen business circumstance is something outside the employer's control).

Even if the Company were allowed to offer a different explanation now (which it should not be allowed to do), and tried to identify something other than its own decision as the "unforeseen business circumstance," this too would be unavailing.  The Company might say that the triggering "circumstance" was that it came to appear that the school district *might decide not to renew* the Company's contract.  But that would not come within the "unforeseen business circumstance" defense.  In fact, the WARN Act regulations demonstrate exactly what the Company should have done, sixty days before the plant closing: it should have given notice that *if* it did not receive a renewed contract from the school system, it would order a plant closing.

> Notice may be given conditional upon the occurrence or nonoccurrence of an event, such as the renewal of a major contract, only when the event is definite and the consequences of its occurrence or nonoccurrence will necessarily, in the normal course of business, lead to a covered plant closing or mass layoff less than 60 days after the event. For example, if the non-renewal of a major contract will lead to the closing of the plant that produces the articles supplied under the contract 30 days after the contract expires, the employer may give notice at least 60 days in advance of the projected closing date which states that if the contract is not renewed, the plant closing will occur on the projected date. The notice must contain each of the elements set out in this section.

20 C.F.R. § 639.7(a)(3).

For these and other reasons, the Company's defense on the merits is likely to fail.  Since the merits are separate from the question of class certification, the more important point for now is that this merits question is one that it is common to all employees, and it predominates over any individualized mathematical calculations of relief for class members.  So, class certification

is appropriate to address this crucial merits question once and for all, for all employees.

**2.      This case is appropriate for class certification; the Company's arguments to the contrary are based on erroneous views of the law.**

This case meets the Rule 23(a) prerequisites, and is appropriate for certification under Rule 23(b), particularly in light of the express statutory expectation that WARN suits would be brought as class actions. 29 U.S.C. § 2104(a)(5). The Company makes a handful of arguments about supposed complexities in the case, repeating most of them multiple times under the rubrics of commonality, typicality, adequacy and predominance. For ease of discussion, we will discuss each of the alleged complexities once, showing that they are irrelevant to the case or are based on an erroneous view of class action practice, rather than treating each of them repeatedly under Rule 23(a) and then again under Rule 23(b). None of them is a reason to deny class certification.

**a.      Employees who were on layoff with expectation of recall have the same claim as employees who were actively working on the date of the plant closing; they, too, were entitled to notice 60 days before the plant closing.**

It is clear as a matter of law, and apparently undisputed, that employees who are on temporary seasonal layoff, and who have a reasonable expectation of recall, are counted as "employees" for WARN Act purposes. The "Definitions" regulation provides, "Workers on temporary layoff or on leave who have a reasonable expectation of recall are counted as employees." 20 C.F.R. § 639.3(a). The Company does not dispute that its employees who were on layoff had a reasonable expectation of recall, in this case.

The Company, though, claims that such employees, such as the named plaintiffs here, are entitled only to 60 days' notice *measured from the date those people would have returned to work* but for the plant closing. The Company argues that the named plaintiffs got that much notice, and so they are not typical or adequate as class representatives; and the Company argues also that this will become an individualized issue of relief making a class action too difficult.

3

But the Company's position is wrong, because it is contrary to what the statute says. *See Carpenters*, 15 F.3d at 1282-83 (statutory interpretation starts with the text, and ends there if the text is clear). WARN notice must be given sixty days before <u>the plant closing</u>. 29 U.S.C. § 2102(a) states, "An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order" on employees and others. The regulation titled "When must notice be given?," answers with the general rule that "notice must be given at least 60 calendar days prior to any planned plant closing or mass layoff …" 20 C.F.R. § 639.5. It is the date of the plant closing – not some later date on which a particular employee expected to be recalled, nor the date on which a particular employee suffers a tangible economic loss – from which the WARN notice date is calculated.[1] This is the same date for all employees, in this case: the plant closing took place on a date certain, the date when the existing contract ended and the Company ceased operation at this facility, as even the Company's submission reflects. The Company did not give 60 days' advance notice of that. This issue is identical as to all employees, including those who were on layoff with an expectation of recall.

    **b.**     <u>**The employees on layoff are entitled to the statutory remedy, just as are the employees actively working on the date of the closing.**</u>

In its attempt to differentiate and deny relief to the employees who were on temporary layoff at the time of the plant closing, the Company relies also on the *Carpenters* opinion's

---

[1] In support of its contrary argument, the Company cites some cases that, frankly, miss this point because they do not stick to the words of the statute: those cases reason as though the law required 60 days' notice before a particular employee's or group's "employment loss," but that is not what the statute says. *See, e.g.*, *Marques v. Telles Ranch*, 131 F.3d 1331 (9th Cir. 1997). Moreover, in some cases, it might be hard to tell exactly when the "plant closing" or "mass layoff" took place, if different groups of employees lost their jobs on different days, and therefore it might be more tempting in those cases to treat the Act as requiring 60 days' notice to each employee before his individual loss of work. But here, there is no obscurity about when the WARN-triggering event (the plant closing) took place. There is, therefore, not even any reason to be tempted to stray from the plain words and plain meaning of the statutory text here.

4

discussion of the Act's remedy provision; but this reliance is misplaced

In *Carpenters*, the Fifth Circuit addressed whether the WARN Act provides relief calculated as a work day's pay times 60, or instead the somewhat lesser amount of relief calculated as a day's pay times the number of work days within a 60 calendar day period. *Id.*, 15 F.3d at 1282 *et seq.*[2] The court adopted the latter formula. The court reached that conclusion, in large part, by analogizing WARN relief to "back pay" under other statutory schemes. (As we will show below, though, the court recognized that the analogy was not perfect – for instance, the WARN Act does not include a set-off for other earnings from another employer, nor a duty to mitigate by seeking other employment.) But that reasoning by analogy should not be stretched, in this case, so as to deny recovery entirely to employees who were on temporary layoff with an expectation of recall at the time of the plant closing here.

WARN relief is somewhat analogous to "back pay," it may be true, but it is more in the nature of a liquidated damage or civil penalty provision than a true compensatory award. Therefore, employees on layoff are entitled to statutory relief, just as are employees who were actively working at the time.

> These employees were not working at the time of the layoff and it is stipulated that they would not have returned to work during the 60 day violation period. Nevertheless, they suffered an employment loss within the meaning of WARN because, until they received the notice of permanent termination on October 3, 1995, they had a reasonable expectation that they would return to their jobs.
>
> As the plaintiffs point out, several cases have held that temporarily laid off workers who have a reasonable expectation of recall are entitled to back pay damages when the employer violates the WARN Act because they suffer a job loss in the same sense that active employees do. …
>
> … Would the 60 day notice, if properly given, have made any difference? Under

---

[2] More precisely, the multiplier in either event would be the number of "days of violation" – which can be less than 60, in a case like this one where the employer does give some notice but gives it too late.

5

> *Ciarlante*, that is irrelevant. The WARN Act requires the notice, and requires damages if the notice is not given.
> … Furthermore, permitting such recovery is consistent with the legislative history of WARN:
>
>> This is in effect a liquidated damages provisions (sic), designed to penalize the wrongdoing employer, deter future violations and facilitate simplified damages proceedings.
>
> S.Rep. No. 62, 100th Cong., 1st Sess. 24 (1987).
>
> The Court, therefore, concludes that the five inactive employees … are entitled to back pay damages to the same extent as the active employees.

*Mine Workers v. Martinka Coal Co.*, 45 F.Supp.2d 521, 529-30 (N.D.W.Va. 1999), *aff'd*, 202 F.3d 717 (4th Cir. 2000). Based on this interpretation of the Act, the employees who were on layoff with an expectation of recall stand in the same position as those actively working; and so there is no distinction here that would stand in the way of class certification.[3]

### c. **It is immaterial that some employees sought and received employment with the school system's new contractor while others did not.**

The Company also seeks to create a division between (a) people who applied for and received employment with the unrelated company that ended up getting the transportation services contract, and (b) people, such as the named plaintiffs, who did not seek or obtain such employment with the entity that got the contract. From this, the Company creates arguments about typicality, adequacy, predominance, and the like. But this putative division is irrelevant to

---

[3] Alternatively, even if calculation of WARN relief was pegged to whether each given person was or would have been working during the "day[s] of violation" (29 U.S.C. § 2104(a)(1)(A)), in this case at least the "day[s] of violation" were the days *before* the shutdown when the employees had no notice of the imminent shutdown. (That is, it would be better in this case not to conceptualize the "day[s] of violation" as being days *after* the shutdown). Here, the Company could not have kept this workplace operating, with its employees, longer than it did; what the Company did wrong, instead, was that it failed to give more advance notice. And on this conceptualization of the "day[s] of violation," seasonal workers such as the named plaintiffs *were* actively working during at least part of the relevant time; and they would therefore at least be entitled to as many days of WARN Act relief as they worked during the relevant "day[s] of violation."

6

WARN Act liability, and so these arguments against class certification are unavailing. All employees – those actively working at the time of the plant closing, as well as those on layoff with an expectation of recall – suffered an "employment loss" by virtue of the plant closing. They are therefore entitled to recovery under 29 U.S.C. § 2104(a) (liability to "each aggrieved employee who suffers an employment loss as a result of such closing.")  This is true, no matter what job any such person did or did not get with some other entity, and no matter what job any such person tried or didn't try to get with some other entity, after the Company violated the law.

The WARN Act's remedial provision does *not* include a set-off for earnings that an employee earned elsewhere after the plant closing/mass layoff.  Furthermore, the remedial provision does *not* include a "duty to mitigate" by seeking employment from another employer. *See Carpenters District Council*, 15 F.3d at 1284 n.14.  Therefore, employment that is sought or received from another entity is, in general, completely irrelevant.  What matters is that each such employee's employment with the Company was terminated; that is an employment loss, leaving each such person within the class of those who are entitled to a remedy. *See* 29 U.S.C. § 2101(a)(6) ("subject to subsection (b) of this subsection," any employment termination, other than discharge for cause, voluntary departure, and retirement, is an "employment loss.")[4]

The WARN Act does contain some limited exceptions to this general rule (which is why the definition of "employment loss" begins, "subject to subsection (b) …"); but those exceptions do not help the Company here, and the Company cannot ask the Court to create a new exception that is not in the statute.  Section § 2101(b) contains (1) an exception pertaining to *sales of businesses*, and (2) an exception that allows employers to avoid WARN duties by offering transfers to the affected employees.  Neither has anything to do with this case.  This case is

---

[4]  In the alternative, employees who were on layoff with expectation of recall suffered an employment loss under § 2101(a)(6)(B) (layoff exceeding six months).

7

therefore governed by the general rule: when you're no longer employed by your employer, because the employer has told you so, you've been terminated. And when you have been terminated, you've suffered an "employment loss" under § 2101(a)(6).

Arguing that people who move swiftly from one employer to being employed by another at the same location have not suffered any "employment loss," the Company relies primarily on two types of cases: (a) cases where the people continued their employment with the same employer (and in which there was, therefore, no "employment loss" at all, even under the plain language meaning of "termination") and (b) cases that involved sales of businesses. Those "sale of business" cases are covered by § 2106(b)(1); they do not help the Company here, because this case plainly does not involve the sale of a business and is therefore not excepted from the definition of "employment loss" by § 2106(b)(1).

The Company cites two cases that it describes as being, in the Company's view, very much like this one. (Company Brief, pp. 20-21). One of them, *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272 (10th Cir. 1994), was a "sale of business" case, in the view of the court that decided the case. The defendant employer had sold the relevant part of its business to the company that assumed its contract. *Id.* at 1280-81. So, like the other "sale of business" cases, *Headley* fails to support the Company here; the fact that some cases (like *Headley*) come within the scope of a congressionally-written statutory provision in § 2106(b)(1) does not mean that the court ought to create a new non-statutory exception for other cases too. This leaves the single District Court decision, *Baker v. Washington Group Int'l*, 2008 U.S. Dist. LEXIS 20343 (M.D. Pa. 2008), which is an incorrect decision. It is incorrect because it does not follow the plain and ordinary meaning of the statutory words. There is no doubt that these employees' employment was terminated; they lost their jobs with the Company once and for all. That was a termination,

and it was therefore an "employment loss" under § 2101(a)(6). The *Baker* court erroneously created a new exception to the definition of "employment loss," essentially on the basis of an analogy to the statutory exceptions in § 2101(b) but not authorized by that subsection. That is not the proper method of statutory interpretation, and this Court should not follow *Baker*. Therefore, again, there is no material distinction in this case between those who sought and accepted work with the new contractor, and those who did not.

        **d.**        **Part-time employees have the same WARN Act claim as full-time employees.**

The Company claims (p. 28) that determining which employees were "part-time" is another individualized inquiry that would make a class action inappropriate. This position is wrong, because it is based on the incorrect assumption that "part-time" employees are not entitled to WARN notice or WARN remedies. In fact, the inquiry about "part-time" employees is relevant *only* to determining whether there was a "plant closing" or "mass layoff," triggering the WARN Act duty to warn. If there was a plant closing (as there undisputedly was, here), "part-time" employees then stand on the same footing as "full-time" employees in terms of the right to notice. 20 C.F.R. 639.6(b) ("While part-time employees are not counted in determining whether plant closing or mass layoff thresholds are reached, such workers are due notice.")

        **e.**        **The Company's arguments about numerosity and superiority are simply an expression of an inappropriately extreme anti-class-action stance that ignores the benefits of the class action device.**

The Company has also made a set of arguments about numerosity (Rule 23(a)) and superiority (Rule 23(b)(3)) that simply demonstrate an inappropriately extreme hostility to class actions, and a failure to appreciate the benefits of the class action device. For the WARN Act in particular, the Congress has explicitly underscored the expectation that such cases will be brought as class actions. *See* 29 U.S.C. § 2104(a)(5) ("A person seeking to enforce such liability

… may sue either for such person or for other persons similarly situated …")

The case is sufficiently numerous to warrant class certification, and a class action makes sense here.  As we have shown above, the class would include all affected persons, those on layoff as well as those actively working on the date of the plant closing, and those who got new jobs with the new contractor as well as those who did not.  The Company pegs this total number at approximately 130, which is easily enough to make a class action appropriate.  The question for numerosity does not strictly depend, as the Company would have it, on whether it would be easy enough (given geography, etc.) to track all those people down and join them individually as parties in their own names; the question instead is whether that would make sense.  It is not just a matter of the mechanics of joining them, and whether the Court could do that with reasonable effort; it is, for purposes of numerosity and superiority, a matter of whether a lawsuit works more smoothly with 130+ named plaintiffs or as a class action.  A class action would work much more smoothly.  A class action would also serve the purpose that the Congress intended: it would enforce the law that Congress wrote, rather than (as the Company plainly hopes) leaving it underenforced by leaving it up to each individual to bring his or her own suit.

It is true that there would be individual mathematical calculations in the end, to determine how much money each class member would receive.  But that is true in literally every WARN Act case.  Still, the common issues – the core issues of liability – predominate over individual issues.  The common issues predominate in terms of the amount of discovery and other work that it will take to litigate them, and they predominate in terms of their importance to the case overall.  This case is just as suited to class treatment as most WARN cases are; and as we have noted, Congress specifically contemplated class actions to enforce the WARN Act.  The Court should certify the class as requested in our motion.

Dated: December 18, 2009

        Respectfully submitted,

        s/Hubert Bell, Jr.

        Attorneys for Plaintiffs

        Hubert Bell, Jr.
        State Bar No. 02076000
        1907 North Lamar Blvd., Suite 300
        Austin, Texas 78705
        P: (512) 469-9006
        F: (512) 469-9008

        LANKENAU & MILLER, LLP
        Stuart J. Miller (SJM 4276)
        132 Nassau Street, Suite 423
        New York, NY 10038
        P: (212) 581-5005
        F: (212) 581-2122

        THE GARDNER FIRM, P.C.
        Mary E. Olsen
        M. Vance McCrary
        210 S. Washington Ave.
        Post Office Drawer 3103
        Mobile, AL  36652
        P: (251)433-8100
        F: (251) 433-8181

        Cooperating Counsel for
        THE NLG MAURICE AND JANE SUGAR
        LAW CENTER FOR ECONOMIC AND
        SOCIAL JUSTICE, a non-profit law firm

## CERTIFICATE OF SERVICE

      I hereby certify that on December 18, 2009, I caused copies of the foregoing to be served on the following via first class mail:

James G. Munisteri, Esq.
Merritt B. Chastain, III, Esq.
GARDERE WYNNE SEWELL LLP
1000 Louisiana, Suite 3400
Houston, TX 77002

Attorneys for Defendant Durham
School Services, L.P.

                                                                                                      Hubert Bell, Jr.